50 Cal.Rptr.3d 815 (2006)
144 Cal.App.4th 965
In re TERRANCE B., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Cherilynn S., Defendant and Appellant.
No. D048200.
Court of Appeal of California, Fourth District, Division One.
November 13, 2006.
*816 Nicole Williams, under appointment by the Court of Appeal, and Niccol Kording, associated in as cocounsel, for Defendant and Appellant.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Katharine R. Bird, for Plaintiff and Respondent.
Carl Fabian, under appointment by the Court of Appeal, for Minor.
NARES, Acting P.J.
Cherilynn S. appeals an order of the juvenile court summarily denying her petition for modification under Welfare and Institutions Code[1] section 388 following a limited reversal and remand for compliance with the notice provisions of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Cherilynn contends the court erroneously believed it had no jurisdiction to address her section 388 modification petition, which sought to: (1) reverse the order terminating her parental rights to her minor son, Terrance B.; (2) have a new selection and implementation hearing on the applicability of the beneficial sibling relationship exception of section 366.26, subdivision (c)(1)(E); and (3) have Terrance placed with her. We conclude the limited reversal and remand contained in the remittitur in Cherilynn's prior appeal precluded the juvenile court from entertaining Cherilynn's section 388 modification petition. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[2]
In July 2002 two-year-old Terrance and his siblings, 11-year-old Rodney S. and 10-year-old Rachel S. (collectively the minors),[3] *817 were taken into protective custody because of ongoing domestic violence between Cherilynn and Terrance's father, Edwin B. In September 2002 the minors became dependents of the juvenile court and were placed in out-of-home care based on findings Edwin physically abused them. Despite having received reunification services, Cherilynn had not regained custody of the minors by the 18-month review hearing. The court terminated services and set a section 366.26 selection and implementation hearing for Terrance.
The minors were originally in separate placements, but were later placed with the same caregiver, who was willing to provide a permanent home for all of them. The permanent plan for Rodney and Rachel was "Another Planned Permanent Living Arrangement," with the prospect of eventually returning them to Cherilynn's custody.
The social worker for the San Diego County Health and Human Services Agency (Agency) recommended adoption as Terrance's permanent plan. She assessed Terrance as adoptable based on his age, the commitment of his current caregiver to adopt him and the existence of 25 other families willing to adopt a child like Terrance. In the social worker's opinion, Terrance's relationships with Cherilynn and his siblings did not outweigh his need for stability and a permanent home, and terminating parental rights would not be detrimental to Terrance.
At a contested selection and implementation hearing, the court received into evidence Agency's reports and heard the testimony of two social workers. The court found, by clear and convincing evidence, it was likely Terrance would be adopted and none of the circumstances of section 366.26, subdivision (c)(1) applied to preclude terminating parental rights. Finding adoption was in Terrance's best interests, the court terminated parental rights and referred Terrance for adoptive placement.
Cherilynn appealed the judgment terminating her parental rights, contending: (1) the evidence was insufficient to support the court's finding the beneficial parent-child relationship did not apply to preclude terminating her parental rights; (2) the court failed to ensure compliance with the notice provisions of ICWA; and (3) Terrance received ineffective assistance of counsel because his attorney had a conflict of interest when he represented all three minors.
In a nonpublished opinion, In re Terrance B, supra, D046481, this court held substantial evidence supported the juvenile court's finding there was no beneficial parent-child relationship within the meaning of section 366.26, subdivision (c)(1)(A) and Cherilynn had not shown minors' counsel had an actual conflict of interest. We further held, however, the juvenile court failed to ensure compliance with the notice provisions of ICWA. Consequently, we issued a limited reversal and remanded the matter with directions that the court order Agency to comply with ICWA's notice requirements and case law interpreting ICWA. Our disposition provided that "[i]f, after proper inquiry and notice, a tribe claims Terrance is an Indian child, the juvenile court shall proceed in conformity with all provisions of ICWA If, on the other hand, no response is received or no tribe claims that Terrance is an Indian child, the judgment terminating parental rights shall be reinstated."
Following the issuance of our remittitur, Cherilynn filed a section 388 modification petition, alleging circumstances had *818 changed in that Rodney and Rachel were recently returned to her. Cherilynn requested the juvenile court reverse the order terminating parental rights, conduct a new selection and implementation hearing to consider this new evidence, and place Terrance with Cherilynn and the siblings. As to best interests, Cherilynn alleged a bonding study showed there is a "highly significant and positive relationship between Terrance and his siblings." Thus, she claimed, terminating parental rights substantially interferes with Terrance's sibling relationships and maintaining this relationship outweighs the permanency and stability of adoption.
At a hearing to address the effect of our remittitur, the court ordered Agency to comply with ICWA notice provisions as discussed in the nonpublished opinion, In re Terrance B., supra, D046481. The court stated it would set a special hearing to address only compliance with ICWA notice and, if proper notice had occurred, it would reinstate the judgment terminating parental rights. Counsel for Cherilynn then asked for a hearing on her section 388 modification petition, arguing the court should consider new evidence as to the beneficial sibling relationship exception of section 366.26, subdivision (c)(1)(E) based on the siblings' recent return to Cherilynn's care. The court denied the request for a hearing, finding our opinion directed a limited reversal and remand for ICWA notice only, and the opinion did not permit the juvenile court to revisit issues from the selection and implementation hearing that were previously resolved and affirmed on appeal.[4]

DISCUSSION
The issue before us is whether the juvenile court had jurisdiction to hear Cherilynn's section 388 modification petition when the matter before it had been remanded for the limited purpose of ensuring compliance with the provisions of ICWA. Cherilynn contends the juvenile court mistakenly believed its jurisdiction was limited by this court's remittitur, resulting in the erroneous failure to hear evidence of Terrance's current circumstances in accordance with the court's continuing duty to consider a minor's best interests. She asserts because the judgment terminating her parental rights was reversed, the juvenile court should have considered the beneficial sibling relationship exception of section 366.26, subdivision (c)(1)(E) as presented in her section 388 modification petition.

A
The propriety of limited reversals and remands in ICWA cases was recently addressed by this court in In re Francisco W. (2006) 139 Cal.App.4th 695, 704-710, 43 Cal.Rptr.3d 171 (Francisco W.). In that case, the appellants challenged our practice of issuing limited reversals in cases with ICWA irregularities by which we order the judgment terminating parental rights to be reinstated if no Indian tribe intervenes after proper notice is given. (Francisco W. at p. 704, 43 Cal.Rptr.3d 171.) Appellants argued that once the judgment terminating parental rights is reversed, due process requires a new selection and implementation hearing under section 366.26 "to allow the court to consider changes in circumstances that affect the *819 child's adoptability before his or her biological ties are severed." (Francisco W. at p. 707, 43 Cal.Rptr.3d 171.) Appellants also argued we act in excess of our jurisdiction by ordering the juvenile court to revisit only the ICWA issue, essentially requiring the court to ignore the legislative mandate for a selection and implementation hearing based on a minor's current adoptability. (Francisco W., supra, at p. 707, 43 Cal.Rptr.3d 171.)
In rejecting both arguments, we held the practice of issuing limited reversals "is legally authorized, consistent with the best interests of children, and in keeping with fundamental principles of appellate practice." (Francisco W., supra, 139 Cal. App.4th at p. 704, 43 Cal.Rptr.3d 171.) First, we noted the appellate court's power to order a retrial on a limited issue is based on the rationale that when an issue can be separately tried without prejudice to the litigants, requiring a complete retrial "... "would unnecessarily add to the burden of already overcrowded court calendars and could be unduly harsh on the parties.' [Citation.]" (Ibid.) The appellate court's order for a retrial on a limited issue, contained in its remittitur, "revests the jurisdiction of the subject matter in the lower court and defines the scope of the lower court's jurisdiction. `The order of the appellate court as stated in the remittitur[] "is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void." [Citation.]' [Citations.]" (Id. at pp. 704-705, 43 Cal.Rptr.3d 171.) Thus, when a judgment is reversed on appeal with directions to the trial court to enter a specific judgment, that reversal "... `determines the merits of the cause just as effectively as though the judgment were affirmed on appeal.' [Citation.]" (Id. at p. 705, 43 Cal.Rptr.3d 171.)
We further noted "[t]he limited reversal approach is well adapted to dependency cases involving termination of parental rights in which we find the only error is defective ICWA notice. This approach allows the juvenile court to regain jurisdiction over the dependent child and determine the one remaining issue. The parties already have litigated all other issues at the section 366.26 hearing, and it is not necessary to have a complete retrial. Thus, the child is afforded the protection of the juvenile court, and, at the same time, his or her case is processed to cure the ICWA error...." (Francisco W., supra, 139 Cal.App.4th at p. 705, 43 Cal. Rptr.3d 171.) In this regard, the practice of limited reversals in defective notice ICWA appeals "promotes the child's best interests and the public policy of this statenamely, that when reunification is not feasible, a permanent home should be found for the child in the most expeditious manner possible under the law. If the only error requiring reversal of the judgment terminating parental rights is defective ICWA notice and it is ultimately determined on remand that the child is not an Indian child, the matter ordinarily should end at that point, allowing the child to achieve stability and permanency in the least protracted fashion the law permits." (Francisco W., supra, at p. 708, 43 Cal. Rptr.3d 171.)

B
The remittitur issued in Cherilynn's prior appeal reversed the judgment terminating parental rights for the sole purpose of revesting jurisdiction in the juvenile court should a tribe, after proper inquiry and notice, determine Terrance was an Indian child and seek to intervene. Thus, our *820 reversal was expressly limited to ensuring proper ICWA notice and proceeding in accordance with any responses. The remittitur defined the scope of the juvenile court's jurisdiction by ordering the court to reinstate the judgment terminating parental rights, thereby foreclosing the right to a new selection and implementation hearing, if ICWA did not apply. Assuming no tribe intervened, our remittitur left intact the juvenile court's findings and order with respect to termination of Cherilynn's parental rights. "Curing the ICWA error is separate and distinct from the section 366.26 protections." (Francisco W., supra, 139 Cal.App.4th at p. 707, 43 Cal.Rptr.3d 171.) Because the juvenile court's duty was to enter judgment in conformity with our remittitur, it properly declined to hear Cherilynn's section 388 modification petition.

C
Although Cherilynn claims that by filing a section 388 modification petition, she is seeking to have the court consider changed circumstances as they affect Terrance's best interests, her petition specifically requests a new selection and implementation hearing at which she can litigate the beneficial sibling relationship exception of section 366.26, subdivision (c)(1)(E) to preclude terminating her parental rights. However, as we held in Francisco W., a party is not entitled to a second selection and implementation hearing when the sole reason for reversal is ICWA notice error. (Francisco W., supra, 139 Cal.App.4th at p. 707, 43 Cal.Rptr.3d 171.)
Cherilynn concedes that our decision in Francisco W. generally precludes the juvenile court from relitigating issues other than ICWA compliance at a new selection and implementation hearing. Nevertheless, she cites language in our opinion acknowledging the possibility of the "extraordinary case in which a postjudgment change in circumstances makes it unlikely the child will be adopted...." (Francisco W., supra, 139 Cal.App.4th at p. 709, 43 Cal.Rptr.3d 171.) Cherilynn asserts Terrance's case is "extraordinary" in that his best interests were at issue on remand because the adoptability finding no longer applied once the siblings were returned to her, causing Terrance to lose an acknowledged beneficial sibling relationship.
Nothing in our decision in Francisco W. authorizes the juvenile court to entertain a party's section 388 modification petition on a limited remand for ICWA notice compliance. Rather, when a postjudgment change in circumstances makes it unlikely the minor will be adopted, section 366.26, subdivision (i)(2) provides the mechanism by which the juvenile court may restore parental rights and select a different permanent plan if the minor has not been adopted after three years.[5] (Francisco W., supra, 139 Cal.App.4th at p. 709, 43 Cal.Rptr.3d 171.) Thus, our limited reversal practice has no effect on the court's ability to prevent a minor from becoming a "legal orphan." (Id. at p. 710, 43 Cal. Rptr.3d 171.)
This is not the "extraordinary" case contemplated by Francisco W. The facts do not in any way suggest Terrance is no longer adoptable or at risk of becoming a legal orphan. The evidence at the selection and implementation hearing showed Terrance was generally adoptable based on his age, physical condition and emotional state. (§ 366.22, subd. (b)(3).) Additionally, Terrance's caregiver, with whom he had lived since he was two years old, was committed to adopting him. Those circumstances *821 have not changed. Even after Terrance's siblings were moved from the caregiver's home, the social worker reported Terrance remained strongly attached to his caregiver and was thriving in this placement, where he received the structure, stability and nurturing he needed to continue developing at an age-appropriate level. Thus, the alleged changed circumstancesthe siblings' return to Cherilynn's custodydid not adversely affect the likelihood Terrance would be adopted.[6] (Francisco W., supra, 139 Cal.App.4th at p. 708, 43 Cal.Rptr.3d 171.)

D
Cherilynn argues limiting the juvenile court's postappeal jurisdiction in a manner that prohibits it from considering a minor's best interests prevents the court from performing its duty under the statutory dependency scheme. In support of this argument, Cherilynn cites case law allowing the court on remand to consider a minor's current circumstances. (In re S.D. (2002) 99 Cal.App.4th 1068, 1070, 121 Cal.Rptr.2d 518; In re Eileen A. (2000) 84 Cal.App.4th 1248, 1259, 101 Cal.Rptr.2d 548; In re Jasmon O. (1994) 8 Cal.4th 398, 414-422, 33 Cal.Rptr.2d 85, 878 P.2d 1297; In re Arturo A. (1992) 8 Cal.App.4th 229, 243, 10 Cal.Rptr.2d 131.) However, those cases involved an unlimited reversal based on error affecting the particular judgment being challenged and, consequently, the scope of the issues to be decided on remand required an updated review hearing encompassing the minor's current status.
Here, in contrast, the order terminating parental rights was not itself erroneous and reversing the judgment was necessitated only by defective ICWA notice. Limiting the juvenile court's postappeal jurisdiction to ensuring compliance with the provisions of ICWA is consistent with the court's duty under the dependency scheme to consider a minor's best interests in stability and finality and to resolve the matter promptly and expeditiously. (Francisco W., supra, 139 Cal.App.4th at p. 706, 43 Cal.Rptr.3d 171; see also In re Jasmon O., supra, 8 Cal.4th at p. 419, 33 Cal.Rptr.2d 85, 878 P.2d 1297; In re Jesusa V. (2004) 32 Cal.4th 588, 625, 10 Cal. Rptr.3d 205, 85 P.3d 2.) By declining to hear Cherilynn's section 388 petition in compliance with our limited remand order, the juvenile court acted in Terrance's best interests, allowing him "to achieve stability and permanency in the least protracted fashion the law permits." (Francisco W., supra, 139 Cal.App.4th at p. 708, 43 Cal. Rptr.3d 171.)
Were we to accept Cherilynn's position that a minor's best interests require consideration of current circumstances, nearly every limited reversal and remand for ICWA compliance would result in the filing of a section 388 petition, based on the inevitability that circumstances had changed, and requiring these changed circumstances be considered at a new selection and implementation hearing. Just as section 366.26 does not require a second hearing when the sole reason for reversal is ICWA compliance, section 388 cannot be used as a vehicle for obtaining one. (See *822 Francisco W., supra, 139 Cal.App.4th at p. 708, 43 Cal.Rptr.3d 171 [the "problem with counsel's position is that in every case we would have to remand for a new section 366.26 hearing, with the attendant delays for notice, trial and appeal"].)

E
Cherilynn further contends the court erroneously believed, in reliance on County Counsel's representations, that the beneficial sibling relationship exception of section 366.26, subdivision (c)(1)(E) had been previously litigated and affirmed on appeal. She asserts that had the court realized the beneficial sibling relationship exception was not previously litigated, it may have considered her section 388 petition and made a determination based on Terrance's best interests.
The court declined to hear Cherilynn's section 388 petition because it properly understood its duty was to enter judgment in conformity with our remittitur, which limited the court's jurisdiction to ensuring compliance with ICWA notice. Even if the court mistakenly believed the beneficial sibling relationship exception had already been litigated, any error was harmless because Cherilynn was not entitled to a hearing on her section 388 petition regarding Terrance's best interests or the applicability of the beneficial sibling relationship exception. (In re Natasha A (1996) 42 Cal. App.4th 28, 38, 49 Cal.Rptr.2d 332 [we review juvenile court's ruling, not its reasoning, and may affirm if it was correct on any ground].)

DISPOSITION
The order is affirmed.
WE CONCUR: McINTYRE and IRION, JJ.
NOTES
[1] Statutory references are to the Welfare and Institutions Code.
[2] A more detailed account of the facts and procedure is contained in our nonpublished opinion in Cherilynn's prior appeal, In re Terrance B., filed on November 23, 2005, D046481.
[3] Terrance is the only subject of this appeal.
[4] The court explained the request for a hearing on the section 388 modification petition was untimely because "the matter has been resolved by this court and the appellate court. I ruled on the [section 366.26, subdivision] (c)(1)(E) exception. I found it did not apply. The appellate court has affirmed the court on that issue. This decision I don't believe opens up the gates to go back and revisit that."
[5] The minor may also file the petition prior to the expiration of this three-year period if the child welfare agency stipulates the minor is no longer adoptable. (§ 366.26, subd. (i)(2).)
[6] At the time of the selection and implementation hearing, Terrance's caregiver was willing to adopt Terrance and keep the siblings in either long-term foster care or guardianship. The social worker noted Terrance enjoyed living with his siblings and appeared to be close to them. Nevertheless, the social worker believed the benefits of permanency for Terrance outweighed "any benefits of keeping his legal relationship to his brother and sister. Terrance deserves to have a permanent home to grow up in and is considered highly adoptable." At the contested hearing, Cherilynn did not claim the beneficial sibling relationship exception applied to preclude terminating her parental rights to Terrance even though it was anticipated Terrance's siblings would eventually be returned to Cherilynn.