Filed 1/27/16  In re M.H. CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re M.H., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B259418 (Super. Ct. No. J069905) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SARAH H.,<br><br>    Defendant and Appellant. | |

Sarah H. (mother) appeals from a juvenile court judgment entered at a contested jurisdictional/dispositional hearing in a dependency proceeding.  (Welf. & Inst. Code, § 300.)[1]  The court declared mother's then six-month-old child, M.H. (daughter), a dependent of the juvenile court, removed her from mother's custody, and denied mother family reunification services.  Mother contends: (1) she did not knowingly and intelligently waive her right to counsel because the court failed to adequately advise her of the dangers of self-representation, (2) the court violated a rule requiring that a

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

self-represented parent in a dependency case be advised at each hearing of his or her right to counsel, and (3) notice was not given as required by the Indian Child Welfare Act (ICWA). We affirm.

*Facts*

The juvenile court found true the following allegations in the juvenile dependency petition: Mother has a history of drug and alcohol abuse as well as "ongoing unmanaged mental health conditions which significantly impede her ability to provide care and support for [daughter]." Mother has six other children who were previously declared dependents of the juvenile court. As to five of the children, mother was unsuccessfully offered family reunification services. The services were terminated, and mother's parental rights to one child were terminated. As to the sixth child, family reunification services were bypassed and mother's parental rights were terminated in August 2013.

The court also found true an allegation that, while in mother's care in September 2010, daughter's three-year-old cousin "suffered severe non-accidental injuries," including "bruising and abrasions to the child's body and face, a fractured right humerus [the long bone in the upper arm], abrasions on the child's nose, severe and deep abrasions on the child's arms consistent with wrist-binding, bald patches on the child's head, swollen and red feet, and bruising on the child's penis." Mother "used cruel forms of punishment on the . . . cousin . . . , including leaving the child in the bathroom for excessive periods of time while strapped in his car seat . . . ." For her acts mother was convicted of felony child endangerment (Pen. Code, § 273a, subd. (a)) and was incarcerated. The court told mother that "for a lot reasons" her decision to represent herself was "not a particularly good idea based on the seriousness of these types of cases and the consequences." The court continued: "I don't know if you have a legal background. But you understand the Court's concerns; correct?" Mother responded, "Yes, I do." She stated that she still wanted to represent herself. The court granted mother's request. It said that she "has made it clear . . . she wishes to represent herself." Mother declared that she had filed a motion "to change the venue and

regarding [daughter's] detention," but she did not have copies to serve on opposing counsel. The court warned her, "You don't get any slack cut . . . by representing yourself. You['re] obligated to follow the same rules and same procedures which include serving motions on opposing counsel so they have notice of what you're asking me to do. Do you understand that?" Mother responded, "Yes."

*Mother Knowingly and Intelligently Waived Her Right to Counsel*

Section 317, subdivision (b) provides that, when the child in a dependency case "has been placed in out-of-home care, or the petitioning agency is recommending that the child be placed in out-of-home care, the court shall appoint counsel for [an indigent] parent or guardian, unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel . . . ." "Section 317, subdivision (b) has been interpreted to give a parent . . . a statutory right to self-representation. [Citation.] . . . [A] parent in a juvenile dependency case does not have a constitutional right to self-representation. [Citation.]" (*In re A.M.* (2008) 164 Cal.App.4th 914, 923; see also *In re Angel W.* (2001) 93 Cal.App.4th 1074, 1080 ["The Sixth Amendment does not apply in dependency proceedings so its structure cannot provide a basis for finding a correlative constitutional right of self-representation"].)

"A waiver of counsel is valid if the juvenile court has apprised the parent of the dangers and disadvantages of self-representation and the risks and complexities of his or her particular case. [Citation.]" (*In re A.M.*, *supra*, 164 Cal.App.4th at p. 923.) But "[t]here is no requirement . . . that the court engage in a full *Faretta*-type admonition and inquiry . . . .[2] Further, the court must respect the right of the parent to represent him- or herself as a matter of individual autonomy and avoid forcing the mentally competent parent to proceed with appointed counsel in the guise of protecting a person who is unskilled in the law and courtroom procedure. [Citations.]" (*In re Angel W.*, *supra*, 93 Cal.App.4th at p. 1084.)

---

[2] *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562].

Mother contends that she did not make a knowing and intelligent waiver of her right to counsel because the juvenile court failed to adequately advise her "of the very real pitfalls of self-representation" and "failed to [inquire] why . . . [she] sought self-representation."  In criminal actions, "[t]he test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case. [Citations.]" (*People v. Bloom* (1989) 48 Cal.3d 1194, 1225.)  The same test should apply in dependency proceedings.  "The burden is on [mother as the] appellant to demonstrate that [she] did not intelligently and knowingly waive [her] right to counsel. [Citation.]  In light of the rule of *People v. Bloom, supra,* 48 Cal.3d [at p.1225], it is clear that this burden is not satisfied by simply pointing out that certain advisements were not given." (*People v. Truman* (1992) 6 Cal.App.4th 1816, 1824; see also *People v. Pinholster* (1992) 1 Cal.4th 865, 928-929, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459 ["As long as the record as a whole shows that the defendant understood the dangers of self-representation, no particular form of warning is required"].)

Here, the record as a whole demonstrates that mother understood "the disadvantages of self-representation, including the risks and complexities of the particular case." (*People v. Bloom*, *supra*, 48 Cal.3d at p. 1225.)  Six of her children had previously been declared dependents of the juvenile court.  As to all six children, family reunification services had been either terminated or bypassed.  Mother's parental rights to two children had been terminated.  Thus, based on her prior adverse experiences in dependency cases, mother surely understood "the risks and complexities of the particular case." (*Ibid.*)

It is reasonable to infer that mother also understood the pitfalls of self-representation.  The court told mother that "for a lot of reasons" her decision to represent herself was "not a particularly good idea based on the seriousness of these types of cases and the consequences."  The court said that mother would not receive

4

preferential treatment and would be "obligated to follow the same rules and same procedures" that opposing counsel would be obligated to follow. Mother said that she understood "the Court's concerns." She experienced first-hand the pitfalls of self-representation when the court informed her that she had not properly served her motion. The court referred to the improper service as "a very early example as to what the problems are [in representing oneself]." "The record therefore establishes that [mother] was sufficiently aware of the dangers and disadvantages of self-representation and made [her] decision with open eyes." (*People v. Bloom*, *supra*, 48 Cal.3d at p. 1225.)

*The Trial Court Did Not Violate a Rule Requiring that*

*Mother Be Advised of Her Right to Counsel at Each Hearing*

Rule 5.534(g) of the California Rules of Court provides, "At each hearing, the court must advise any self-represented child, parent or guardian of the right to be represented by counsel and, if applicable, of the right to have counsel appointed . . . ." Mother argues that the juvenile court violated this rule because it failed to so advise her at a subsequent hearing on August 26, 2014. The advisement was not required because the hearing on August 26, 2014, was not a separate hearing. It was a continuation of the jurisdictional/dispositional hearing at which mother had waived her right to counsel on June 23, 2014.

*The Juvenile Court Complied with ICWA Notice Requirements*

Mother informed the juvenile court that her "father has Cherokee [a]ncestry." The court found that the ICWA did not apply to daughter. Mother argues that the court failed to comply with the notice requirements of the ICWA.

Any notice defect was cured while the appeal was pending. (See *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1432 ["several cases . . . have concluded that an agency's failure in the juvenile court to show compliance with the ICWA notice requirements may be cured by making the necessary showing in the appellate court"].) The augmented record on appeal shows that, after mother's opening brief was filed, respondent mailed notice to the Bureau of Indian Affairs, the Cherokee Nation, the

5

Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma. The tribes replied that daughter is not eligible for tribal membership. The juvenile court subsequently found that the ICWA does not apply to daughter.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                    YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

6

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Julie E. Braden, under appointment by the Court of Appeal, for Appellant.

Leroy Smith, County Counsel, County of Ventura and Joseph J. Randazzo, Assistant County Counsel. for Respondent.